UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   <u>13-20180-CR-ALTONAGA</u>

UNITED STATES OF AMERICA,

v.

ANDRE WOODSON,

       **Defendant.**

_____/

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

The United States of America, by and through its undersigned Assistant United States Attorney, hereby files this response to defendant Andre Woodson's Motion for Compassionate Release (DE 385)(hereinafter "Motion"). In light of the threat posed by the COVID-19 pandemic, Mr. Woodson seeks immediate release pursuant to 18 U.S.C. § 3582(c)(1)(A). After reviewing Mr. Woodson's medical records, his pursuit of administrative remedies, his role in the offense and overall criminal history, the Government agrees that release from prison, followed by supervised release with home confinement, is warranted and the Defendant's Motion should be granted.

## FACTUAL BACKGROUND

Mr. Woodson pled guilty to possession with intent to distribute cocaine base and powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and was sentenced as a Career Offender to 151 months' imprisonment. Woodson was accountable for 26.7 grams of cocaine base and .94 grams of powder cocaine. No role enhancement was applied because Mr. Woodson was not a leader in the conspiracy. He has been in custody since April 2013 and has served 7 years in prison. A more comprehensive statement of the prior proceedings and facts of the case can be found in the Government's Response in Opposition to Defendant's Petition for Sentence Reduction (DE 378).

According to the Bureau of Prison's (BOP) website, he is scheduled for release on January 6, 2024. As of yesterday, May 27, 2020, there has been one inmate and one staff member who has tested positive for COVID-19 at FCI Coleman Medium, the location where Mr. Woodson is currently incarcerated. *See* BOP website at https://www.bop.gov/coronavirus/. Nationwide, as of yesterday, 64 federal inmates have died because of COVID-19. *Id*.

## LEGAL FRAMEWORK

Under 18 U.S.C. § 3582(c)(1)(A), this Court may, in certain circumstances, grant a defendant's motion to reduce his or her term of imprisonment. Before filing that motion, however, the defendant must first request that BOP file such a motion on his or her behalf. § 3582(c)(1)(A). A court may grant the defendant's own motion for a reduction in his sentence only if the motion was filed "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after 30 days have passed "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

If that exhaustion requirement is met, a court may reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Green*, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that

(i) "extraordinary and compelling reasons warrant the reduction;" (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (iii) "the reduction is consistent with this policy statement." USSG § 1B1.13.[1]

The policy statement includes an application note that specifies the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." USSG § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is:

> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

USSG § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. USSG § 1B1.13, cmt. n.1(B)-(C). Finally, the note recognizes the possibility that BOP could identify other grounds that amount to "extraordinary and compelling reasons." USSG § 1B1.13, cmt. n.1(D).

The Centers for Disease Control and Prevention (CDC) has identified risk factors that place individuals at higher risk of severe outcomes from COVID-19. It is the Department of Justice's position during the current COVID-19 pandemic that an inmate who presents one of the following

---

[1] The policy statement refers only to motions filed by the BOP Director. That is because the policy statement was last amended on November 1, 2018, and until the enactment of the First Step Act on December 21, 2018, defendants were not entitled to file motions under § 3582(c). *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239; *cf.* 18 U.S.C. § 3582(c) (2012). In light of the statutory command that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A)(ii), and the lack of any plausible reason to treat motions filed by defendants differently from motions filed by BOP, the policy statement applies to motions filed by defendants as well.

CDC risk factors, as confirmed by medical records, and who is not expected to recover from that condition, presents an extraordinary and compelling reason allowing compassionate release under the statute and guideline policy statement, even if that condition in ordinary times would not allow compassionate release:

- Asthma (moderate to severe)
- Chronic kidney disease being treated with dialysis
- Chronic lung disease, such as chronic obstructive pulmonary disease (COPD) (including emphysema and chronic bronchitis), idiopathic pulmonary fibrosis, and cystic fibrosis
- Diabetes, including type 1, type 2, or gestational
- Hemoglobin disorders, such as sickle cell disease and thalassemia
- Immunocompromised, including from cancer treatment, bone marrow or organ transplantation, immune deficiencies, HIV with a low CD4 cell count or not on HIV treatment, and prolonged use of corticosteroids and other immune weakening medications
- Liver disease, including cirrhosis
- Serious heart conditions, including heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension
- Severe obesity, defined as a body mass index (BMI) of 40 or above

During the current COVID-19 pandemic, the chronic medical conditions above present "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that the inmate's ability to provide self-care against serious injury or death as a result of COVID-19 is substantially diminished, within the environment of a correctional facility, by the chronic condition itself.

The fact that such an inmate has established an extraordinary and compelling reason does not, however, resolve the inmate's entitlement to a reduction in sentence. The court must also consider whether the inmate poses a danger to the community and all other pertinent 3553(a) factors, including the defendant's history and characteristics, the time remaining on the sentence, and the quality of the release plan. Under the applicable policy statement, this Court must deny a sentence reduction unless it determines the defendant "is not a danger to the safety of any other person or to the community." USSG § 1B1.13(2). Additionally, this Court must consider the § 3553(a) factors, as "applicable," as part of its analysis. *See* § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

## ARGUMENT

A. **Administrative Exhaustion**

The defendant has satisfied the administrative exhaustion requirement. As explained above, § 3582(c) requires that a request for a sentence reduction be presented first to BOP for its consideration; only after 30 days have passed, or the defendant has exhausted all administrative rights to appeal the BOP's failure to move on the defendant's behalf, whichever is earlier, may a defendant move for a sentence reduction in court. On April 1, 2020, Mr. Woodson's wife wrote the Acting Warden of FCI Coleman requesting that Mr. Woodson be released early based specifically on health concerns related to the COVID-19 pandemic. On April 9, 2020, the Acting Warden responded and denied the request for early release. *See* Exhibit A attached to defendant's Motion. Moreover, on May 2, 2020, defense counsel submitted an appeal to the BOP Southeast Regional Director, to which there has not yet been a response. Since the BOP has been provided

an opportunity to weigh in and 30 days have passed since the defendant's initial request for COVID-specific relief to BOP, the administrative exhaustion requirement has been satisfied.

### B. Extraordinary and Compelling Reason for Release

Mr. Woodson, as confirmed by BOP medical records, suffers from three conditions that meet the CDC guidelines for increased risk of severe outcomes from COVID-19 infection. First, he has had moderate to severe asthma since childhood that requires a daily use of an inhaler and that has resulted in wheezing during both the day and night. *See* Defendant's BOP Medical Records at pages 1 and 3, attached as Exhibit A to Government's Response. Second, Mr. Woodson has a serious heart condition that includes a diagnosis of coronary atherosclerosis (cardiovascular disease) and hypertension. *Id.*. Mr. Woodson was sent to the hospital for chest pains in February 2019, during which a cardiac catheter placed inside him showed a lesion in his heart. *Id.* at 3. Finally, Mr. Woodson has been diagnosed with ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.* at 102 (November 2018 medical evaluation).

In short, there is no question that Mr. Woodson has medical conditions that, under the CDC Guidelines, put him at higher risk for a severe COVID-19 outcome. As such, during this pandemic, he presents extraordinary and compelling reasons for release based on having "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I)

6

### C. Section 3553 Factors

Mr. Woodson's medical qualifications for release, however, do not end the inquiry. The Court must assess whether the defendant should be released based on the 3553 factors, particularly his criminal history, the time remaining on the sentence, and the quality of the release plan. *See* USSG § 1B1.13(2); § 3582(c)(1)(A); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020).

Viewed in the fuller context of cases within our district where the Government has opposed compassionate release during the pandemic, Mr. Woodson's criminal offense conduct is comparatively less egregious. He is not the leader of a drug cartel, nor even a leader within the smaller drug conspiracy that he was a part of. There was no violence associated with his offense conduct and no evidence that he possessed a firearm during the offense. The amount of drugs he was held responsible for is relatively small and does not qualify for a mandatory minimum based on drug amount.

Mr. Woodson's previous criminal history, however, made him a Career Offender under the Guidelines. This is what drove his higher sentence and what gives the most pause in analyzing whether a sentence reduction is justified and whether the community would be safe upon his release. Mr. Woodson's youth was marked with a litany of crimes he committed, mostly petty but some of which were violent. His last violent offense (an assault and burglary on a person he knew) was in 2005, 15 years ago. That offense, however, under current sentencing law, would likely not qualify as a crime of violence under the Career Offender guidelines were he to be sentenced today. Mr. Woodson is now 51 years old. He has served over 7 years in prison for this drug offense, which is nearly 70% of his total time, given that he is scheduled for release in about 3.5 years.

During his 7 years in custody, BOP records indicate that Mr. Woodson has not had any disciplinary infractions.

Moreover, the U.S. Probation Officer in the case has confirmed that Mr. Woodson would have a safe place to stay if he is released and would be supported financially: he would reside with his wife of 14 years at her house in Miami, Florida, and she has a steady job.

In sum, the totality of Mr. Woodson's criminal history is troubling, but does not currently pose much risk to the community given his age, the lack of severity in his offense conduct, the length of time that has passed since his previous criminal conduct, the significant percentage of time that he has already served in prison, his good behavior while in prison, and the stability of his prospective home life upon release. While the Government would not have recommended an early release from prison in ordinary times, justice requires early release under the defendant's circumstances now. There have been at least two COVID-19 infections at the institution where is housed and the cumulative vulnerabilities that he faces from his three qualifying medical conditions under the CDC Guidelines make the case for compassion manifest.

### D. Supervised Release with Home Confinement

If a court grants the sentence reduction, it may "impose a term of . . . supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." § 3582(c)(1)(A). In imposing a term of supervised release, the court may impose a period of home confinement as a condition of supervised release, provided that the court finds that home confinement is a "substitute for imprisonment." USSG § 5F1.2; *see* 18 U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a period of home confinement, consistent with USSG § 5F1.2. See § 3583(e)(2).

After consulting with the U.S. Probation Office, the Government recommends that the Court mandate that a term of supervised release include conditions of home confinement during the remainder of his unserved portion of the original term of imprisonment.

## **CONCLUSION**

For all the reasons stated above, this court should grant the defendant's motion.

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

By:   s/ Michael Thakur
MICHAEL THAKUR
ASSISTANT UNITED STATES ATTORNEY
Court No. A5501474/Florida Bar No. 1011456
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9361
Fax: (305) 530-7976
Email: Michael.Thakur@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 28, 2020, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.